**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CLARA CRAWFORD,

*Plaintiff,*

v.

MICHAEL J. ASTRUE, Commissioner
of the Social Security
Administration,

*Defendant-Appellee,*

v.

BRIAN C. SHAPIRO,
*Real-party-in-interest-Appellant.*

No. 06-55822

D.C. No.
CV-00-11884-AN

RUBY WASHINGTON,

*Plaintiff,*

v.

MICHAEL J. ASTRUE, Commissioner
of the Social Security
Administration,

*Defendant-Appellee,*

v.

YOUNG CHO,
*Real-party-in-interest-Appellant.*

No. 06-55954

D.C. No.
CV-03-06884-AN

14861

DAPHNE M. TREJO,
                    *Plaintiff,*

          v.

MICHAEL J. ASTRUE, Commissioner
of the Social Security
Administration,
                    *Defendant-Appellee,*

          v.

DENISE BOURGEOIS HALEY,
     *Real-party-in-interest-Appellant.*

No. 06-56284

D.C. No.
CV-98-05662-RNB

OPINION

Appeal from the United States District Court
for the Central District of California
Arthur Nakazato and Robert N. Block, Magistrate Judges,
Presiding

Argued and Submitted
June 22, 2009—Seattle, Washington

Filed November 4, 2009

Before: Alex Kozinski, Chief Judge, Mary M. Schroeder,
Betty B. Fletcher, Harry Pregerson, Stephen Reinhardt,
Andrew J. Kleinfeld, Marsha S. Berzon,
Johnnie B. Rawlinson, Richard R. Clifton, Carlos T. Bea,
and N. Randy Smith, Circuit Judges.

Opinion by Judge B. Fletcher;
Partial Concurrence and Partial Dissent by Judge Clifton;
Dissent by Judge Bea.

## COUNSEL

Lawrence D. Rohlfing, Santa Fe Springs, California, for the real parties in interest-appellants.

Michael E. Robinson, Department of Justice, Washington, D.C., for the defendant-appellee.

---

## OPINION

B. FLETCHER, Circuit Judge:

We review three consolidated appeals that present one overarching issue: Did the district court follow the mandate of *Gisbrecht v. Barnhart*, 535 U.S. 789 (2002), in determining the amount of attorneys' fees awarded to lawyers who successfully represented Social Security disability insurance ("SSDI") claimants in federal court under contingent-fee contracts?[1] We hold in each case that it did not. We vacate the district courts' orders and grant the attorneys the contingency-based fees they requested.

## I.

In each of the three cases presented for review, the Social Security Administration ("SSA") denied a claim for benefits. Each claimant retained an attorney to challenge the administrative action in federal court. Each of the three claimants was represented by a different attorney: Brian C. Shapiro represented Clara Crawford; Young Cho represented Ruby Washington; and Denise Bourgeois Haley represented Daphne M.

---

[1]The three orders are appealed from the Central District of California. Two of them, *Crawford v. Barnhart*, No. 00-cv-11884, and *Washington v. Barnhart*, No. 03-cv-06884, were decided by Magistrate Judge Nakazato. The third, *Trejo v. Barnhart*, No. 98-cv-05662, was decided by Magistrate Judge Block.

Trejo. All three attorneys were affiliated with the Lawrence D. Rohlfing ("Rohlfing") law firm, which specializes in Social Security matters. In each case, the claimant signed a written contingent-fee agreement under which the attorney would be paid 25% of any past-due benefits awarded to the claimant. The district court remanded each case back to the SSA, which eventually awarded substantial past-due benefits to each claimant. The attorneys subsequently filed motions in the district court pursuant to 42 U.S.C. § 406(b) requesting fees of less than the 25% of past-due benefits for which their attorney-client fee agreements provided. In each case, the Commissioner of Social Security ("Commissioner") declined to assert a position on the reasonableness of the fees requested by the attorneys.[2] None of the claimants objected to the requested fees. Nevertheless, the district court in each case awarded significantly lower fees than the attorneys sought.[3]

## A.   *Crawford (Real-party-in-interest Shapiro)*

On remand, the SSA awarded Crawford $123,891.20 in past-due benefits. Twenty-five percent of that amount is $30,972.80. Shapiro requested a fee of $21,000 (16.95% of the past-due benefits awarded). To support his motion, Shapiro presented evidence that he spent 19.5 hours of his own time and 4.5 hours of paralegal time on Crawford's case. Because the Rohlfing firm operates only on a contingent-fee basis, Shapiro presented evidence (1) that small firms charged average hourly rates, after accounting for inflation, of $272.72 for partners, $186.54 for associates, and $93.82 for paralegals; (2) that the upper-decile hourly rates charged for each posi-

---

[2]The Commissioner "plays a part in the fee determination resembling that of a trustee for the claimants." *Gisbrecht*, 535 U.S. at 798 n. 6.

[3]In each case, the district court properly reduced the fee award by the amount of attorneys' fees already paid by the government under the Equal Access to Justice Act ("EAJA"). *See* 28 U.S.C. § 2412. A district court may award fees under both the EAJA and 42 U.S.C. § 406(b), "but the claimant's attorney must refund to the claimant the amount of the smaller fee." *Gisbrecht*, 535 U.S. at 796 (quotation and alteration omitted).

tion in small firms were $366.54, $272.72, and $130.91, respectively; and (3) that the average gross income of small plaintiffs' contingency firms was about 30-40% higher than the average gross income of all small law firms combined. He also presented evidence that a lawyer representing SSDI claimants in federal court could anticipate payment in only about 35% of cases because (1) district courts granted benefits in SSDI cases only about 6% of the time, and (2) in the 48% of cases in which the district court remanded an SSDI case to the agency, the SSA awarded benefits about 60% of the time. To aid the district court's evaluation of his request, Shapiro noted that the fee he requested was equivalent to 3.55 times the lodestar calculation and reasonably accounted for the risk he assumed in representing his client on a contingent-fee basis.

The court found that there was no "fraud or overreaching" in the negotiation of the 25% contingent-fee agreement, that the requested fee was within the 25% boundary set by § 406(b), and that Shapiro caused no unnecessary delay resulting in an undue accumulation of back benefits. The court also found that the hours, comparative hourly rates, and inflation rates that Shapiro presented were reasonable and would result in a lodestar fee of $5,907.14. The court concluded, however, that Shapiro had not met his burden of convincing the court that a fee of $21,000, which the court found represented a 256% "enhancement" over the lodestar, was reasonable. The court noted that Shapiro did not present "data regarding his firm's success rate that would enable the Court to assess the risk assumed by his firm in representing social security benefits claimants in the Central District of California" and determined that counsel's expertise had already been taken into account in the comparative hourly rate. The court therefore found that the fee constituted a "windfall" and that a "substantial reduction [was] warranted." The court concluded, without explaining its reasoning, that a 40% percent enhancement over the lodestar fee would be reasonable. The

court awarded a fee of $8,270.00, or 6.68% of the past-due benefits.

### B. *Washington (Real-party-in-interest Cho)*

On remand, the SSA awarded Washington $76,041.00 in past-due benefits. Twenty-five percent of that amount is $19,010.25. Cho sought a fee of $11,500.00 (15.12% of the benefits awarded). Cho presented evidence that he spent 17.45 hours of his time and 4.7 hours of paralegal time on the case. Cho introduced the same comparative hourly rate data that Shapiro presented, as well as evidence that the costs of legal services had risen faster than the cost of living, justifying hourly rates in the ninth decile of $429.95 for partners, $319.90 for associates, and $153.55 for paralegals. Finally, Cho presented the same success-rate data for SSDI cases as did Shapiro. Cho noted that courts determining fees in class-action securities cases had found that multipliers of 3 to 4.5 over the lodestar were reasonable.

The same magistrate judge who decided *Crawford* also decided *Washington*. As in *Crawford*, the court found that there was no "fraud or overreaching" in the making of the contingent-fee agreement, that the fee Cho sought fell within the 25% statutory boundary and was less than the fee Washington agreed to pay, and that there was no "excessive delay" attributable to counsel. The court also found that the economic data Cho presented were reasonable. Nevertheless, the court found that the requested fee, which it found represented an 82% "enhancement" over the $6,303.95 lodestar fee, was unreasonable. As in *Crawford*, the court noted that Cho had provided no data regarding his law firm's success rate and that Cho's skills were already accounted for in determining the reasonable hourly rate. The court also found that: (1) "counsel did not have to do much work to persuade the Commissioner to stipulate to a remand," and (2) a fee representing a 3 to 4.5 multiplier over the lodestar would be unreasonable because Social Security cases are not as complex or expensive

as class-action securities litigation. Concluding that the requested fee would represent a "windfall," the court applied a 40% enhancement to the lodestar fee, without explaining why that percentage increase would result in a reasonable fee. The court awarded a fee of $8,825.53, or 11.61% of the past-due benefits.

## C. *Trejo (Real-party-in-interest Haley)*

On remand, the SSA awarded Trejo $172,223.00 in past-due benefits. Twenty-five percent of that amount is $43,055.75. Haley sought a fee of $24,000 (13.94% of the past-due benefits awarded.) She presented evidence that she spent 26.9 hours of her time and 2.6 hours of paralegal time on the case. She also presented the same comparative hourly rate data and success rate data as did Shapiro and Cho.

The court acknowledged the contingent-fee agreement providing for 25% of the past-due benefits awarded and found that there was no evidence of fraud or overreaching by counsel in making the agreement. The court noted the "high quality of the representation provided . . . which ultimately resulted in a fully favorable decision awarding over twelve years of back benefits" and found that there was no excessive delay attributable to Haley. The court also found that Haley's economic data were reasonable. Nevertheless, the court found that the fee Haley sought was unreasonable. First, finding that 1.5 hours of claimed paralegal time and 1.4 hours of claimed attorney time were improperly attributed to the federal court action, the court reduced the hours worked to 25.5 hours of attorney time and 1.1 hours of paralegal time. Second, as in *Crawford* and *Washington*, the court noted that Haley had provided no data regarding her law firm's success rate and that Haley's skills were already accounted for in determining the reasonable hourly rate. Third, the court found that there was no evidence that the firm was precluded from other employment by accepting Trejo's case and that the case did not involve any unduly short time limits. The court concluded

that "plaintiff's counsel has done a wholly inadequate job convincing the Court that the 279% enhancement sought . . . is reasonable under the circumstances presented," and that a reasonable enhancement over the $6,325.20 lodestar would be 100%. The court did not, however, explain why a 100% enhancement would be reasonable. The court determined that a reasonable fee would be $12,650.40, or about 7.35% of the past-due benefits.

## II.

The three attorneys timely appealed the district courts' fee orders. We consolidated the cases for argument. We review a district court's award of attorneys' fees pursuant to 42 U.S.C. § 406(b) for abuse of discretion. *Clark v. Astrue*, 529 F.3d 1211, 1213 (9th Cir. 2008) (citing *Allen v. Shalala*, 48 F.3d 456, 457 (9th Cir. 1995), *abrogated on other grounds by Gisbrecht*, 535 U.S. at 799). "The district court abuses its discretion if it does not apply the correct legal standard or rests its decision on a clearly erroneous finding of fact." *Id.* at 1214. We review de novo the district court's interpretation of a statute. *Id.*; *see also Mudd v. Barnhart*, 418 F.3d 424, 427 (4th Cir. 2005) (reviewing de novo the district court's interpretation of 42 U.S.C. § 406(b)).

## A.

**[1]** Under 42 U.S.C. § 406(b), a court entering judgment in favor of an SSDI claimant who was represented by an attorney "may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment."[4] In contrast

---

[4]Section 406(b)(1)(A) provides,

  Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an

to fees awarded under fee-shifting provisions such as 42 U.S.C. § 1988, the fee is paid by the claimant out of the past-due benefits awarded; the losing party is not responsible for payment.[5] *Gisbrecht*, 535 U.S. at 802. Also in contrast to fees awarded under fee-shifting statutes, under which "nothing prevents the attorney for the prevailing party from gaining additional fees, pursuant to contract, from his own client," *id.* at 806, the court-awarded fee is the only way a successful SSDI attorney may recover fees for work performed before the district court. In fact, it is a criminal offense for an attorney to collect fees in excess of those allowed by the court. 42 U.S.C. § 406(b)(2); *see also Gisbrecht*, 535 U.S. at 806-07.[6]

SSDI attorneys routinely enter into contingent-fee agreements specifying that the fee will be 25% of any past-due benefits recovered, thus providing the attorney the statutory maximum of fees if the representation is successful. *See Gis-*

_____

attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment, and the Commissioner of Social Security may . . . certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits.

[5]Section 406(b) fees are based only on the amount of past-due benefits recovered, even where the claimant is entitled to continuing benefits. *See Gisbrecht*, 535 U.S. at 795. Thus, the claimant may actually pay the attorney far less than 25% of the total benefits recovered.

[6]An attorney may also petition for fees for representing a claimant at the administrative level. 42 U.S.C. § 406(a). Section 406(a) fees may not exceed the lesser of 25% of past-due benefits or $5,300. 42 U.S.C. § 406(a)(2)(A)(ii), (iii); *Gisbrecht*, 535 U.S. at 795 (noting that the statutory $4,000 limit was increased to $5,300 by regulation in 2002); 67 Fed. Red. 2477. The 25% cap on attorneys' fees in § 406(b) limits only the amount of attorneys' fees awarded for representation before the district court. It does not limit the combined fees awarded under § 406(a) for representation before the SSA and under § 406(b) for representation before the district court. *Clark*, 529 F.3d at 1218.

*brecht*, 535 U.S. at 803. Contingent-fee agreements were already prevalent at the time § 406(b) was enacted, *see id.* at 805, and agreements providing for fees of 25% of past-due benefits have since become the "most common fee arrangement between attorneys and Social Security claimants." *Id.* at 800. The statute does not specify how courts should determine whether a requested fee is reasonable. *See id.* (noting "the statute's inconclusive text"). Rather, the statute provides only that the fee must not exceed 25% of the past-due benefits awarded.

**[2]** Before *Gisbrecht*, the circuits were split regarding how to address this ambiguity in the statute. We belonged to the majority of circuits which used the lodestar method to determine a reasonable fee under § 406(b). *See Gisbrecht v. Apfel*, 238 F.3d 1196, 1197-98 (9th Cir. 2000); *see also Allen*, 48 F.3d at 458. Under the lodestar method, the district court determines a reasonable fee by multiplying the reasonable hourly rate by the number of hours reasonably expended on the case. *Gisbrecht*, 238 F.3d at 1197-98. Although the district court could consider the contingent nature of the fee agreement in determining a reasonable fee, we held that failure to do so was not an abuse of discretion. *See id*. at 1199. Three other circuits rejected the lodestar method, instead giving effect to the attorney-client contingent-fee agreement unless the resulting fee was unreasonable. *See Wells v. Sullivan*, 907 F.2d 367, 370 (2d Cir. 1990); *Rodriquez v. Bowen*, 865 F.2d 739, 746 (6th Cir. 1989) (en banc); *McGuire v. Sullivan*, 873 F.2d 974, 980-81 (7th Cir. 1989); *see also Gisbrecht*, 535 U.S. at 799 (listing cases).

**[3]** In *Gisbrecht*, the Supreme Court flatly rejected our lodestar approach. The Court explained that we had "erroneously read § 406(b) to override customary attorney-client contingent-fee agreements" when we approved the use of the lodestar to determine a reasonable fee, *Gisbrecht*, 535 U.S. at 808-09. The Court held that a district court charged with determining a reasonable fee award under § 406(b)(1)(A)

must respect "the primacy of lawful attorney-client fee agreements," *id.* at 793, "looking first to the contingent-fee agreement, then testing it for reasonableness," *id.* at 808. The Court noted that courts that had followed this model had "appropriately reduced the attorney's recovery based on the character of the representation and the results the representative achieved." *Id.* A fee resulting from a contingent-fee agreement is unreasonable, and thus subject to reduction by the court, if the attorney provided substandard representation or engaged in dilatory conduct in order to increase the accrued amount of past-due benefits, or if the "benefits are large in comparison to the amount of time counsel spent on the case." *Id.* "[A]s an aid to the court's assessment of the reasonableness of the fee yielded by the fee agreement," but "not as a basis for satellite litigation," the court may require counsel to provide a record of the hours worked and counsel's regular hourly billing charge for noncontingent cases. *Id.* The attorney bears the burden of establishing that the fee sought is reasonable. *Id.* at 807.

**[4]** The Supreme Court made clear in *Gisbrecht* why courts must start with the contingent-fee agreement in SSDI cases. The Court explained that the lodestar method was developed to implement fee-shifting statutes, which assess fees against the losing party and which do not prevent the attorney from seeking additional fees from the client. *See Gisbrecht*, 535 U.S. at 802, 806. SSDI attorneys' fees, in contrast, are not shifted. They are paid from the award of past-due benefits and the amount of the fee, up to 25% of past-due benefits, is based on the agreement between the attorney and the client. *See id.* at 803-04.[7] Congress chose to embrace the use of contingent

---

[7]As the Second Circuit explained, in a pre-*Gisbrecht* case, "since there is no shifting of fees under § 406(b), courts need not be Solomon-like arbiters of 'reasonableness' between the opposing interests of prevailing plaintiffs and losing defendants. Rather, because a successful social security claimant evaluates and pays his own attorney, a court's primary focus should be on the reasonableness of the contingency agreement in the context of the particular case." *Wells*, 907 F.2d at 371 (internal citation omitted).

fees to compensate lawyers who represent SSDI claimants. When Congress added § 406(b) to the Social Security Act in 1965, contingent fees paid from past-due benefits were already the norm. *See id.* at 804 (discussing the 1965 amendments' legislative history). Rather than displace contingent-fee agreements, the amendment was meant to address a particular problem in their implementation. Attorneys were entering into agreements reserving what Congress regarded as "exorbitant fees" of one-third to one-half of the past-due benefits, often for easy cases in which the attorney would purposefully cause delay in order to increase the accrued benefits and the resulting fees. *See id.* At the same time, Congress was mindful that fee awards should be sufficient to encourage adequate representation of claimants. *See id.* at 806; *see also Wells*, 907 F.2d at 370 (contingent-fee agreements "effectuate [C]ongress's objective of securing adequate representation for social security claimants"). Against this backdrop, Congress enacted § 406(b), which says nothing to discourage contingent-fee agreements, instead opting for a 25% cap on fees. *See Gisbrecht*, 535 U.S. at 805.

[5] As this history demonstrates, Congress and the Supreme Court have considered the negative policy implications of allowing the lodestar methodology to drive SSDI fee awards. Given the prevalence of lodestar calculations in the fee-shifting context, district courts are familiar with the normal lodestar rules. These include the "strong presumption" that the lodestar is the reasonable fee, *see City of Burlington v. Dague*, 505 U.S. 557, 562 (1992), and the rule forbidding contingency enhancements to compensate for the risk of non-payment in fee shifting cases. *See id.* at 566-67. These rules should not apply where the fee is paid by the client under the agreement negotiated between the parties. The lodestar method under-compensates attorneys for the risk they assume in representing SSDI claimants and ordinarily produces remarkably smaller fees than would be produced by starting with the contingent-fee agreement. A district court's use of the lodestar to determine a reasonable fee thus ultimately

works to the disadvantage of SSDI claimants who need counsel to recover any past-due benefits at all.

## B.

**[6]** The Supreme Court in *Gisbrecht* has given the district courts direction in how to evaluate a request for a contingent fee under § 406(b). Courts must "approach [§ 406(b)] fee determinations by looking first to the contingent-fee agreement, then testing it for reasonableness." *Gisbrecht*, 535 U.S. at 808; *see also Mudd*, 418 F.3d at 428 (recognizing this same methodology). Because the SSA has no direct interest in how much of the award goes to counsel and how much to the disabled person, the district court has an affirmative duty to assure that the reasonableness of the fee is established. Performance of that duty must begin, under *Gisbrecht*, with the fee agreement, and the question is whether the amount need be reduced, not whether the loadstar amount should be enhanced. An examination of the fee awards in these cases makes it starkly evident that the district courts did not follow this path. Instead, in direct contrast to *Gisbrecht*'s mandate, the district courts' decisions "rest[ed] on lodestar calculations and reject[ed] the primacy of lawful attorney-client fee agreements." *Gisbrecht*, 535 U.S. at 793.

Here, in each case, the client signed a contract providing that the attorney would receive 25% of any past-due benefits awarded following appeal to the district court. In determining a reasonable fee, the district courts proceeded contrary to the requirements of *Gisbrecht* by beginning with a lodestar calculation. Each court compared the lodestar fee to the requested fee award, and referred to the difference between the two as "an enhancement." In each order, the district court expressed the "enhancement" as a percentage of the lodestar for example, the *Crawford* court noted that the requested fee would have represented a 256% enhancement over the lodestar—and found that each enhancement would be a "windfall" to the lawyers. Each court then added a percentage of the lodestar

to enhance the lodestar fees, choosing 40% for the *Crawford* and *Washington* cases and 100% for the *Trejo* case. Had the district court awarded the full fees contracted by the parties, the attorneys in these cases would have received fees ranging from $19,010.25 to $43,055.75. Instead, they received amounts ranging from $8,270.00 to $12,650.40. The fees awarded ranged from 6.68% to 11.61% of the past-due benefits awarded. Put another way, the district courts reduced the contractual fees by between 53.57% and 73.30%.[8]

**[7]** By beginning with the lodestar calculation, the district courts plainly failed to respect the "primacy of lawful attorney-client fee agreements." *Gisbrecht*, 535 U.S. at 793. Lawful attorney-client contingent fee agreements do not result in "enhancements" that modify a lodestar fee that might otherwise be too low. Rather, they are the "primary means" by which fees are determined. *Id.* at 807. The district courts' methodology in these cases under-emphasizes the contingent-fee agreements, contravening the Supreme Court's instruction that the agreements be the primary means for determining the fee.

These cases vividly demonstrate the deleterious effect of a district court's failure to recognize the distinction between fee-shifting cases and cases involving payment by the claimant from his benefit award. All of the normal lodestar language and methodology are accounted for in the district court's orders: reasonable fees, reasonable hours, and an "enhancement." Lodestar fees will generally be much less than contingent fees because the lodestar method tends to under-compensate attorneys for the risk they undertook in representing their clients and does not account for the fact that the statute limits attorneys' fees to a percentage of past-due benefits

---

[8]The attorneys in these cases themselves suggested that the full 25% fee provided for by their fee agreements would be unreasonable. They therefore sought fees ranging from 13.94% to 16.95% of the benefits awarded, a substantial reduction from the amounts for which the contracts provided.

and allows no recovery from future benefits, which may far exceed the past-due benefits awarded. In *Crawford*, for example, the district court awarded 6.68% of the past-due benefits. From the lodestar point of view, this was a premium of 40% over the lodestar. It seems reasonable. But from the contingent-fee point of view, 6.68% of past-due benefits was over 73% less than the contracted fee and over 60% less than the discounted fee the attorney requested.[9] Had the district court started with the contingent-fee agreement, ending with a 6.68% fee would be a striking reduction from the parties' fee agreement. This difference underscores the practical importance of starting with the contingent-fee agreement and not just viewing it as an enhancement.

**[8]** The district court orders quote extensively from *Gisbrecht*. They even cursorily discuss the character of the representation—noting that it was skillful and not dilatory—before concluding that the requested fee would represent a windfall to the attorneys. But this parroting of language from *Gisbrecht* does not mean that the district courts actually applied its teachings. As the orders make clear, the district courts in these cases started with the lodestar calculation and then adjusted upward to account for the contingent nature of the representation. This is contrary to the Supreme Court's clear directive that the district court must first look to the fee agreement and then adjust downward if the attorney provided substandard representation or delayed the case, or if the requested fee would result in a windfall. *See id.* at 808; *see also Rodriquez*, 865 F.2d at 746 ("In the event the court chooses not to give effect to the terms of the agreement, it should state for the record the deductions being made and the reasons therefore.").

---

[9]The attorneys in *Washington* and *Trejo* were dealt a 23% and a 47% reduction, respectively, from the fees requested.

## C.

**[9]** The fees requested here are reasonable under the test mandated by *Gisbrecht*. Although *Gisbrecht* did not provide a definitive list of factors that should be considered in determining whether a fee is reasonable or how those factors should be weighed, the Court directed the lower courts to consider "the character of the representation and the results the representative achieved." *Gisbrecht*, 535 U.S. at 808; *see also Mudd*, 418 F.3d at 428 ("The Court did not provide a definitive list of factors to be considered because it recognized that the judges of our district courts are accustomed to making reasonableness determinations in a wide variety of contexts." (quotation and alterations omitted)). The court may properly reduce the fee for substandard performance, delay, or benefits that are not in proportion to the time spent on the case. *Gisbrecht*, 535 U.S. at 808. As evidence of the reasonableness of the resulting fee, the court may require counsel to submit a record of hours spent and a statement of normal hourly billing charges. *Id.* The Supreme Court did acknowledge that the district court could consider the lodestar calculation, but *only as an aid* in assessing the reasonableness of the fee. *See id.*

**[10]** Applying *Gisbrecht*'s reasonableness test, we hold that the attorneys in these cases met their burden to demonstrate that the fees they requested were reasonable. First, no reduction in fees due to substandard performance was warranted. Nothing in the district courts' opinions suggests that counsels' performance was anything other than excellent. In each case, the attorneys demonstrated (and the district courts found) that there was no evidence of fraud or overreaching in the making of the 25% contingent-fee agreements and that they provided high-quality representation which resulted in their clients receiving substantial past-due benefits. Second, no reduction in fees for dilatory conduct was warranted, as the attorneys in these cases caused no excessive delay which resulted in an undue accumulation of past-due benefits. Finally, the requested fees, which were significantly lower than the fees

bargained for in the contingent-fee agreements, were not excessively large in relation to the benefits achieved. In each case, counsel voluntarily evaluated the fees in comparison to the amount of time spent on the case. In each case, counsel voluntarily reduced those fees substantially from the allowable 25%. The attorneys will receive no percentage of the substantial future benefits paid to the claimants following their successful representation. The attorneys assumed significant risk in accepting these cases, including the risk that no benefits would be awarded or that there would be a long court or administrative delay in resolving the cases.[10]

[11] Counsel have waited a long, long time for payment, and have borne the costs of this appeal out of the fees to which they are entitled. To force petitioners' counsel to multiply the diminution of those fees by going through three separate and unnecessary district court proceedings would be completely unjustified. The question before the district courts was whether the fees sought by petitioners are reasonable. *See Gisbrecht*, 535 U.S. at 809 (holding that 42 U.S.C. § 406(b) "instructs courts to review for reasonableness fees yielded by [attorney-client contingent-fee] agreements."); *see also Wells*, 907 F.2d at 371 ("[B]ecause a successful social security claimant evaluates and pays his own attorney, a court's primary focus should be on the reasonableness of the contingency agreement in the context of a particular case."). Because we have held that the fees are reasonable, nothing remains for the district courts to do in these cases, except to award those fees. The Supreme Court in *Gisbrecht* held that "satellite litigation" over attorneys' fees should not be encouraged. *See Gisbrecht*, 535 U.S. at 808. Accordingly, we hold that petitioners are entitled to the fees which they requested and remand with instructions to award the requested fees.

---

[10]For example, it took over six years for the SSA to resolve Trejo's case after the district court remanded it to the agency.

**D.**

**[12]** A separate and adequate ground for vacating the orders in these cases is the district courts' failure to explain why the percentages by which they enhanced their lodestar calculations produced a reasonable fee in each case. Although the district court has discretion to determine a reasonable fee, it must provide "a concise but clear explanation of its reasons for the fee award." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Here, although each district court explained on a very general level that the requested fee would result in a windfall to the attorney, each court failed to relate its "enhancement" of the lodestar to the circumstances of the individual case. *See, e.g.*, *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (noting that where the district court awards a substantially reduced fee, it must "articulate[ ] its reasoning with more specificity"); *Gates v. Deukmejian*, 987 F.2d 1392, 1400 (9th Cir. 1993) (as amended) ("the use of percentages" does not "discharge[ ] the district court from its responsibility to set forth a 'concise but clear' explanation of its reasons for choosing a given percentage reduction").

**[13]** In addition, the district courts' orders in *Trejo* and *Crawford* misconstrue the nature of the risk assessment by focusing on the firm's overall success rate instead of the specific facts that make a given case more or less risky for the firm. For example, in *Crawford*, the district court faulted the firm for failing to "provide[ ] any data regarding [the] firm's success rate that would enable the Court to assess the risk assumed by [the] firm in representing social security benefits claimants in the Central District of California." This misstates the attorney's burden, which is to show that the fee is reasonable based on the facts of the particular case. A district court cannot reduce the amount of a fee simply because a firm is generally successful. Rather, the district court should look at the complexity and risk involved in the specific case at issue to determine how much risk the firm assumed in taking the case.

### III.

Because the district courts inverted the reasonableness analysis prescribed by *Gisbrecht*, and because the attorneys proved the reasonableness of their fees and none of the grounds in the district court orders establish unreasonableness, we direct the district court to grant the attorneys their requested fees. We VACATE the district courts' orders and REMAND with instructions to order the SSA to pay the attorneys the fees they requested, less fees already paid under the EAJA, and to release the balance of the withheld past-due benefits to the claimants.

**VACATED and REMANDED WITH INSTRUCTIONS.**

---

CLIFTON, Circuit Judge, with whom Chief Judge KOZINSKI joins, concurring in part and dissenting in part:

I agree with the majority that the district courts did not apply the proper standard in determining the amounts of fees awarded to the attorneys who represented the claimants in these cases. I thus concur in sections I, II, III-A, and III-B of the majority opinion.

I do not agree with the majority's order that claimants' attorneys be awarded the amounts they requested, however, and from that order I respectfully dissent. The cases should instead be remanded so that the respective district courts can determine reasonable fees by applying the proper standard. That is a task assigned to the district courts, not to us, and it is the expertise of the district courts that the Supreme Court referenced in *Gisbrecht v. Barnhart*, 535 U.S. 789, 808 (2002) ("Judges of our district courts are accustomed to making reasonableness determinations in a wide variety of contexts, and

their assessments in such matters, in the event of an appeal, ordinarily qualify for highly respectful review.")

The majority opinion sets a poor example for district courts to follow. It orders payments that translate into hourly rates, for the time of both attorneys and paralegals, of $519 in *Washington*, $875 in *Crawford*, and $902 in *Trejo*. But, as described in more detail in Judge Bea's dissenting opinion, the majority opinion provides no serious explanation of why these awards are reasonable or why they do not represent "windfalls." It instructs district courts to "look at the complexity and risk involved in the specific case at issue to determine how much risk the firm assumed in taking the case," *supra* at 14881, but it does not comply with that requirement itself, not even in the Washington case, where the district court found that claimant's counsel faced "very little risk." It acknowledges, *supra* at 14870, the finding by the district court in the Trejo case that 1.4 hours of reported attorney time and 1.5 hours of paralegal time did not properly relate to the federal court action, but it still awards the claimant's attorney the full amount of fees requested, with no reduction for the inappropriate time entries.

It is not obvious to me that there is no "windfall" in any of the fee requests made by claimants' attorneys. It would not necessarily constitute an abuse of discretion for a district court to decline to award the full amounts requested. Awarding the attorneys what they ask for brings an end to this matter without requiring a remand, but it does not satisfy our obligation under the statute to protect the interests of the claimants themselves, from whose past benefits the money is taken. In future cases, the district courts should do as we say, not as we do.

BEA, Circuit Judge, with whom RAWLINSON and N.R. SMITH, Circuit Judges, join, dissenting:

This is a case about how much an attorney should get paid for successfully representing someone who claims the government incorrectly withheld social security disability benefits ("SSDI"). In each of these cases here on appeal, the plaintiffs filed a claim with the government that they were disabled and therefore eligible for SSDI. The social security agency disagreed with each of them. After the government denied the claims, each claimant hired an attorney to appeal the government's decision. The contract between the claimants and their attorneys stated the claimants would pay the attorneys 25 percent of the benefits they receive if their appeal succeeded. In SSDI cases, successful plaintiffs are entitled to an award in an amount equal to the sum of the monthly payments they would have received had the government approved their disability claim when plaintiffs initially filed them. Congress, however, decided that contracts between SSDI claimants and their attorneys must be reviewed by a judge, and that the attorneys must prove to the judge that the amount of fees they request are "reasonable." In each of these cases, the district courts decided the requested fees were unreasonable and awarded the attorneys a smaller share of the disabled claimants' recovered benefits than what the attorneys sought.

The majority decides the attorneys' fee requests were reasonable. Therefore, the disabled clients must pay their attorneys a larger share of their disability benefits than the district courts decided was reasonable. The majority reaches this decision regardless of the fact that the district courts were more familiar than we are with the difficulty, if any, of these cases and how much work the attorneys did on each case. Essentially, we disagree with how the majority reads *Gisbrecht v. Barnhart*, 535 U.S. 789 (2002), the most recent decision from the Supreme Court on the topic of attorneys fees in SSDI cases. We think the majority faults the district courts for doing something—namely considering the amount of time the

attorneys worked on each case—that the Supreme Court required them to do. Under *Gisbrecht*, we think the district courts did not abuse their discretion by finding the requested fee amounts were unreasonable, or in awarding the attorneys a lower amount of fees based on the amount of time the attorneys spent on each case. Therefore, we would affirm the decisions below.

The magistrate judges below did not abuse their discretion by awarding attorneys' fees of less than the amounts requested. *See Clark v. Astrue*, 529 F.3d 1211, 1213 (9th Cir. 2008). A lower court abuses its discretion if it (1) applies an incorrect legal standard or (2) makes factual findings that are illogical, implausible, or bereft of support in the record. *Id.* at 1214. The magistrate judges here carefully applied the method outlined in *Gisbrecht v. Barnhart*, 535 U.S. 789 (2002), and each opinion was fully supported by the record. The majority chastises the magistrate judges for not following *Gisbrecht*, but then fails to follow it themselves. Therefore, we think the majority has itself abused its own discretion in ignoring the standard of review, re-weighing the evidence, and engaging in appellate fact finding. As the Supreme Court emphasized, district court judges and magistrates, not appellate court judges, are "accustomed to making reasonableness determinations in a wide variety of contexts, and their assessments in such matters, in the event of an appeal, ordinarily qualify for highly respectful review." Id. at 808.

The statute governing this case states that the court may allow "a reasonable fee for such representation, not in excess of 25 percent of the total past-due benefits . . . ." 42 U.S.C. § 406(b). *Gisbrecht* requires that the trial judge perform an independent "check" of contingent fee arrangements "to assure that they yield reasonable results in particular cases." *Gisbrecht v. Barnhart*, 535 U.S. 789, 807 (2002). The sole issue of this case is whether the trial judges' rulings constitute an abuse of discretion in their application of 42 U.S.C. § 406(b) as interpreted by the Court in *Gisbrecht*.

In *Gisbrecht*, the Supreme Court held district courts must not solely consider the lodestar method (reasonable hours spent multiplied by a reasonable hourly rate) for calculating reasonable attorneys' fees in SSDI cases. The lodestar method was designed to balance the interests of opposing parties under fee-shifting statutes. Attorneys representing SSDI claimants are paid fees from the recovery for the disabled client, not from the opposing party. SSDI claimants typically cannot afford an attorney's hourly fee. Thus, virtually all attorneys charge a contingency fee in these cases. Again, 42 U.S.C. § 406(b) sets the maximum percentage that may be charged for representing a claimant in district court at 25 percent of past benefits recovered.

To determine the amount of attorney's fees to be awarded when the claimant is successful, a court first looks at any contingent-fee agreement for reasonableness "based on the character of the representation and the results the representative achieved." *Gisbrecht*, 535 U.S. at 808. The Supreme Court gave two examples of when a district court should reduce an attorney's recovery under such a contingent fee arrangement: (1) when the attorney is responsible for an unreasonable delay in recovering benefits for the claimant (because the attorney should not profit from the accumulation of unpaid benefits during the delay); and (2) "when the benefits are large in comparison to the amount of time counsel spent on the case." *Id*.

There is no claim here that any of the attorneys in the three cases before us purposely delayed proceedings so as to pile up unpaid benefits into a larger pot to divide with the client. Instead, at issue here is whether the benefits to counsel are large in comparison to the amount of time counsel spent on the case. To make that determination, *Gisbrecht* permits the trial court to require "the claimant's attorney . . . submit . . . as an aid to the court's assessment of the reasonableness of the fee yielded by the fee agreement, a record of the hours spent representing the claimant and a statement of the law-

yer's normal hourly billing charge for noncontingent-fee cases." *Id.* The Supreme Court specifically left it to a district court's discretion to decide what a reasonable amount of time to be spent on a case entailed.

The magistrate judges here each followed the process outlined in *Gisbrecht*. First they examined the contingency fee agreements. Then each compared the amount of the requested fee award to the amount of time the attorneys spent. To aid the magistrate judges in making such a comparison, the attorneys submitted a record of their hours and, statistics on the average hourly rate for comparable attorneys in lieu of their own hourly billing charge because they take cases only on a contingency basis.

After considering this information, the magistrate judges found that to grant the attorneys the full amount of their requested contingency fees would result in windfalls for the attorneys. The magistrate judges consequently granted smaller attorneys' fee awards based on computations of the amount of hours spent *plus* a substantial bonus percentage.

The majority's reasoning as to why the magistrate judges were wrong here is inadequate. First, the majority states the magistrate judges erred because they failed to give "primacy" to the contingent-fee agreements. *See* Slip Op. 14877. We do not know what the majority might mean by this term. But it cannot be the meaning of "primacy" as used in *Gisbrecht*.[1]

In *Gisbrecht*, the Supreme Court reversed us because we "rejected the primacy of lawful attorney-client fee agreements." *Id.* at 793. This statement is easily understood in context. Prior to the enactment of § 406(b), contingent-fee agreements were the most prevalent method by which SSDI

---

[1] Primacy is defined as "the state of being first (as in importance, order, or rank)." Merriam-Webster's Online Dictionary (2009). To date, no other circuits have addressed the meaning of "primacy" in *Gisbrecht*.

claimants paid their attorneys. *Id.* at 803. Our error was that we had rejected this most frequently used method attorneys and SSDI claimants used to negotiate fees. The Supreme Court held it was unlikely Congress intended § 406(b) to ban contingency fee agreements altogether and replace them solely with courts' application of the lodestar method, particularly because the lodestar method was developed years after Congress enacted § 406(b). *Id.* at 806.

When the majority attempts to clarify the meaning of "primacy," it ends up replacing "primacy" with "exclusivity." That interpretation is simply contrary to *Gisbrecht*, which encourages district courts to assess the reasonableness of the time the attorney spent on a case. The actual amount of time spent on a case provides the trial judge with a reference amount to use in determining whether the attorney would receive a windfall. A windfall can be identified only by comparing the requested amount with a reference amount. Here, the trial judges were given three amounts by the parties: the contingent fee amount, the amount requested by the attorney, and the reference—or "lodestar"—amount. The trial judges found the requested amounts to be a "windfall"—another way of saying the requested amounts were not reasonable—and considered an upward adjustment from the reference amount. Therefore, the judges here spent time explaining why the court needed to increase the reference amount.

The majority, perhaps recognizing that "primacy" is a thin reed from which to hang its opinion, dismisses the magistrate judges' discussion of the contingency fee agreements as mere lip-service to, or parroting of, *Gisbrecht*. This is quite a cavalier assault on the sincerity of our magistrate judges, hardly the "highly respectful review" the Supreme Court instructed us to apply to those most "accustomed to making reasonableness determinations." *Gisbrecht*, 535 U.S. at 808.

The majority says it is skeptical whether the magistrate judges adequately considered the contingency fee agreement

because they each used the term "enhancement" when they compared the requested amount of attorneys' fees to the amount of time spent and the reasonable hourly rate. But, the choice of the term "enhancement" is supported by *Gisbrecht* itself. In describing the approved method of determining reasonableness, *Gisbrecht* relied on several other opinions, including *McGuire v. Sullivan*, 873 F.2d 974, 979, 981 (7th Cir. 1989), which refer to "enhancements" and "risk enhancements" over a lodestar figure when discussing whether a contingent-fee agreement is reasonable. Thus, the use of this one word does not reflect an improper analysis.

The second reason the majority may doubt the magistrate judges' decisions is that the fees award were each significantly lower than the requested amount. In other words, the majority does not like the final result. That the judges in the majority would have awarded higher fees, however, does not mean the magistrate judges abused their discretion and erred in applying *Gisbrecht*.

The magistrate judges found awarding the requested fees would result in a windfall for the attorneys.[2] The majority does not discuss how the magistrate judges erred in their findings that the requested fees would be a windfall for the attorneys; nor does the majority even discuss what properly defines the discretionary range in which the magistrates could find a windfall. It is the magistrate judges, however, and not this court, who best know the cases, the pleadings, the effort invested by each attorney, and all other relevant factors in assessing whether the requested fee awards were reasonable. This familiarity is decisive. If the magistrate judges found that the attorneys did not assume a significant risk in accepting representation, then awarding a significant fee based on the risk of litigation would indeed be a "windfall."

---

[2]"Windfall" seems like a good term to apply to a fee award if "the benefits are large in comparison to the amount of time the attorney spent on the case." *Id.* at 807.

The majority devotes all of three sentences to discussing what would be reasonable fees and why. It asserts (1) the fees requested were reasonable because the attorneys requested less than the full 25% allowed under the contingency fee agreement; (2) the attorneys will not receive a percentage of the SSDI claimants future benefits; and (3) the "attorneys assumed significant risk in accepting these cases, including the risk that no benefits would be awarded or that there would be a long court or administrative delay in resolving the case." Op. at 14880. The attorneys' choices to reduce their requested fees tell us only that they too were somewhat loath to seek the full amount of fees as written in the contracts. An attorney must still show the requested amount is reasonable, not merely that the requested amount is less than an admittedly higher, unreasonable amount.[3]

The second reason is a red herring; future benefits are never available under § 406(b) and cannot contribute to assessing whether a particular fee request under § 406(b) is reasonable.

The third reason is directly contrary to the specific findings of the magistrate judge in *Washington*. There, the magistrate judge found the facts of the case weighed heavily in favor of the SSDI claimant, which demonstrated the attorney took on "very little risk" of losing the case. Yet, the majority says not a word about why the magistrate judge abused his discretion

---

[3]SSDI is not the only field of the law where attorney contingency fee contracts are subject to court supervision based on reasonableness. Personal injury contingency fee contracts for representation of minors and all sorts of probate court matters come to mind. In these cases, courts review contingency fee agreements for reasonableness and use many of the factors found in lodestar analyses, such as the amount of time spent on the case. *See, e.g.*, *Padilla v. McClellan,* 93 Cal. App. 4th 1100, 1107 (2001) (assessing the "type and difficulty of the matter, counsel's skill vis-à-vis the skill required to handle the case, counsel's age and experience, the time and attention counsel gave to the case, and the outcome"). *See also* Revised Code of Washington § 4.24.005 (providing for judicial review of attorneys' fees based on factors such as "time and labor required," in all tort actions).

in making this factual finding. So much for application of our standard of review. In *Crawford* and *Trejo*, the magistrate judges did not make explicit findings about the risk of losing the case, but considered the difficulty of the case in assessing the quality of the representation. Most importantly, *every* SSDI case involves risk of loss. If that factor is sufficient to show requested attorneys fees are reasonable, district courts will be reduced to rubber stamping contingency fee requests.

Similarly, there is no support for the majority's position that reversing the magistrate judges' orders is necessary to assure SSDI claimants have a corps of attorneys from which to choose, to be sure to receive adequate representation. This musing by the majority lacks any support in this record. Further, if a redistribution of money, awarded to palliate the claimant's disability, between the disabled claimant and his attorney is needed to make available adequate plaintiffs' counsel, that is a policy consideration to be addressed by Congress, not the courts.

Perhaps the strongest contention in support of reversing the decisions below is that the magistrate judges did not precisely explain the computations that led to their fee awards. The magistrate judges applied either a 40% or 100% risk-factor upward enhancement to the lodestar amount computed in each case. Admittedly, the magistrate judges appear to reach those specific numbers, as opposed to say, 45% or 103%, by judicial fiat; they do not explain how they reached these percentages. Instead, in *Crawford* and *Washington*, the magistrate judges explained that they increased the attorney fees by 40% above the lodestar, because (a) there was no excessive delay and (b) plaintiff's counsel was able to persuade the Commissioner to stipulate to a remand, ultimately leading to the favorable decision. However, the judges refused to increase the fee by 256% (that requested in *Crawford*) or 82% (that requested in *Washington*) because (1) counsel in *Crawford* did not meet his burden to show the risk of accepting the rep-

resentation justified his requested amount[4]; (2) counsel did not have to do much work to persuade the Commissioner to stipulate to a remand in *Washington*; and (3) counsel incurred little risk in *Washington*, because it was so clear that the ALJ had erred. In *Trejo*, the magistrate judge increased the fees by 100% because (1) the attorney provided high quality representation and (2) although there was excessive delay in reaching the ultimate decision, it was not due to plaintiff's counsel. However, the judge refused to increase the fee by 279%, because (1) counsel did not provide data on her firm's success rate; (2) there was no evidence the attorney was precluded from other employment due to acceptance of the case; and (3) the case did not require short time limitations.

In *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008), we held district courts must provide a specific explanation for reductions of requested fee awards greater than 10%. *Moreno*, however, involved a district court reducing an attorneys' fee request based on the district court's determination the attorney did redundant work and should not have been remunerated for specific hours the attorney claimed to have spent on the case. *See id.* at 1112-14. When a district court disregards and eliminates some of an attorneys' billable hours, the court can easily explain its reductions arithmetically. When a district court determines a contingent risk factor, however, arithmetic is insufficient.

For example, in *Trejo* the attorney requested $24,000, which was 14% of the $172,223 award for unpaid benefits to the SSDI claimant. The magistrate awarded $12,650.40, or 7.3% of the unpaid benefits, by taking the number of hours

---

[4]The district court found, in part, counsel failed to meet his burden because he failed to provide data on the success rate of his firm. The success rate of plaintiff's specific firm is not relevant; it is the success rate of all attorneys who take on similar representations that matters for the purpose of determining contingent risk. Otherwise, the courts would punish successful attorneys and reward incompetent attorneys.

multiplied by the average hourly rate of comparable attorneys ($6,325.20) and then doubling that fee to take the attorney's risk of not getting paid into account. Would the majority require the magistrate judge to explain exactly how he arrived at 100%? The Supreme Court made it clear we should rely on the lower courts' expertise to make reasonableness determinations.

Lastly, even though the Supreme Court overruled this Circuit in *Gisbrecht*, it *remanded* "for recalculation of counsel fees payable from the claimant's past-due benefits." *Id.* at 793. The majority here criticizes and overrules the magistrate judges for failing to follow *Gisbrecht*. Then, by judicial fiat, it refuses to follow *Gisbrecht*'s direction. It states merely, "[b]ecause we have held that the fees are reasonable, nothing remains for the district courts to do in these cases, except to award those fees" and then awards the fees requested by the attorneys in each of these cases. *See* Slip Op. 14880. The appellate court, at most, can determine what the trial court did was error, but should remand to the district court to determine whether, upon according "primacy" to the contingency agreements, the district court determines the fees requested were reasonable.

If we overrule the district court, we (like the Supreme Court did in *Gisbrecht)* should remand these cases to those courts to make the reasonableness determination in these cases. *Gisbrecht* did not hold that contingent fee agreements, if not in excess of 25 percent of past-due benefits, are presumptively reasonable. *Gisbrecht,* 535 U.S. at 792. *Gisbrecht* instead gives the attorney for the plaintiff the burden of showing that "the fee sought is reasonable for the services rendered." *Id.* at 807. For these reasons alone, even if the magistrate courts in these decisions applied *Gisbrecht* incorrectly, we can only remand after giving them clarifying instructions. The Supreme Court has shown that remand is the correct procedure when district courts misapply the law in determining attorneys fees in SSDI cases, because district

judges and magistrate judges, not appellate court judges, are "accustomed to making reasonableness determinations in a wide variety of contexts." *Gisbrecht,* 535 U.S. at 808.

For these reasons, we respectfully dissent.