IN THE

# United States Court of Appeals
## For the Second Circuit

————

AUGUST TERM, 2021

ARGUED: OCTOBER 19, 2021
DECIDED: JANUARY 28, 2022

No. 20-3760-CV

JIM R. FIELDS,

*Plaintiff,*

*v.*

KILOLO KIJAKAZI, M.D., ACTING COMMISSIONER OF SOCIAL SECURITY,

*Defendant-Appellee,*

*v.*

LAW OFFICE OF CHARLES E. BINDER AND HARRY J. BINDER, LLP,

*Real-Party-in-Interest-Appellant.*[1]

————

Appeal from the United States District Court
for the Southern District of New York.
No. 1:18-cv-02072-SDA – Stewart D. Aaron, *Magistrate Judge.*

[1] The Clerk of Court is directed to amend the caption as set forth above.

Before: CALABRESI, POOLER, AND PARKER, *Circuit Judges*.

_____

Real-party-in-interest Law Office of Charles E. Binder and Harry J. Binder, LLP ("Binder & Binder") appeals from the September 5, 2020, order of the United States District Court for the Southern District of New York (Stewart D. Aaron, *M.J.*) granting in part and denying in part the firm's motion for attorney's fees in a Social Security disability case. *See* 42 U.S.C. § 406(b). The district court found that the requested amount, though authorized by a contingency agreement between Binder & Binder and Mr. Fields, would result in an impermissible "windfall." It therefore found Binder & Binder's requested fee to be unreasonable and reduced it by more than half. We hold that for a court to find an attorney's agreed-upon contingency fee unreasonable under § 406(b) on the sole ground that it constitutes a windfall, it must be truly clear that the high fee represents a sum unearned by counsel. Because the requested fee in this case is not such a windfall, we **REVERSE** the district court and **REMAND** with instructions to order the Social Security Administration to release the requested fee to Binder & Binder.

DANIEL S. JONES, Law Office of Charles E. Binder and Harry J. Binder, LLP, New York, NY, *for Real-Party-in-Interest-Appellant.*

JOSEPH A. PANTOJA, Assistant United States Attorney (Christopher Connolly, Assistant United States Attorney, *on the brief*), *for* Audrey Strauss, United States Attorney for the Southern District of New York, New York, NY, *for Defendant-Appellee.*

CALABRESI, *Circuit Judge*:

This case and cases like it are about getting parties who are disabled what they are owed while encouraging truly good lawyers to take on their cases. The question before us involves the role of contingency fees in achieving these goals. A contingency fee charged in any given winning case is likely to be high in relation to the hours actually spent on the case by the lawyer. But, without contingency fees, people in need of good lawyers would often not be able to hire them.

To deal with this problem in Social Security disability cases, Congress capped contingency fees at twenty-five percent of the claimant's past-due benefits and charged courts with ensuring that resulting fees are "reasonable." *See* 42 U.S.C. § 406(b)(1)(A). Both our court and the Supreme Court have set out guidelines for courts conducting this reasonableness analysis, instructing them to consider: a) the character of the representation and the result the representative

achieved, b) whether a claimant's counsel is responsible for undue delay,[2] and c) whether there was fraud or overreaching in the making of the contingency agreement. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 808 (2002); *Wells v. Sullivan* ("*Wells II*"), 907 F.2d 367, 372 (2d Cir. 1990).

All that is clear enough. But, as a part of the reasonableness determination, a district court must also consider whether a requested fee would result in a "windfall" to counsel. *See Gisbrecht*, 535 U.S. at 808; *Wells II*, 907 F.2d at 372. This factor can create problems. In the case before us, the district court found counsel's requested fee to be unreasonable based on windfall concerns. And it found the fee to be a windfall because, after reviewing other similar cases, the de facto hourly rate achieved by the contingency agreement was on the high end of the spectrum for such cases.

This determination was error. For a district court to find that the fee provided by a contingency agreement in such cases is unreasonable, and to do so solely on the grounds that the amount requested is a windfall, it must first be truly clear that the fee is unearned by counsel. That was not the case here. Because we conclude that there is no windfall in this case, and because there is no other reason to think that the fee requested is unreasonable, we reverse the district court's order and remand with instructions to award the requested fee.

---

[2] Undue delay can be a particular problem in cases like these, in which past-due benefits are at stake. Because delay increases the size of a plaintiff's recovery, it may also increase disproportionately a lawyer's contingent fee recovery. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 791 (2002) (noting that where "the attorney is responsible for delay," the attorney should not be allowed to "profit from the accumulation of benefits during the pendency of the case in court").

## BACKGROUND

In 2011, Jim R. Fields retained the Law Office of Charles E. Binder and Harry J. Binder, LLP, ("Binder & Binder"), to represent him in a claim for disability benefits under the Social Security Act. After obtaining the assistance of Binder & Binder, Mr. Fields filed an application for Social Security disability benefits on September 15, 2011, claiming an onset of disability as of February 12, 2009. When his claim was denied, Mr. Fields requested a hearing before an Administrative Law Judge ("ALJ"). That hearing took place before ALJ Dennis G. Katz on October 15, 2012.

In a decision dated November 8, 2012, ALJ Katz found that Mr. Fields was not disabled for purposes of Social Security. Mr. Fields requested that the Appeals Council review that decision, but, on July 8, 2014, the Appeals Council denied the request for review.

Mr. Fields then signed a retainer agreement authorizing Binder & Binder to appeal the denial of disability benefits in federal court. Accordingly, the firm filed a civil complaint in the United States District Court for the Southern District of New York on August 25, 2014, seeking review of the agency's decision denying benefits to Mr. Fields. Before an answer was filed, the parties agreed to have the case remanded for further administrative proceedings, and, on November 19, 2014, the district court (Ronnie Abrams, *J.*) entered an order remanding the case pursuant to the stipulation of the parties. The Appeals Council, in turn, sent the claim back to the ALJ for a new hearing.

On October 20, 2016, ALJ Katz heard Mr. Fields's claim for a second time, and, in a decision dated October 31, 2016, again found that Mr. Fields did not qualify for disability benefits. While ALJ Katz conceded that Mr. Fields could not perform the type of work he had in the past, he found that Mr. Fields retained the "residual functional capacity" to perform "light work" in jobs that were available and hence was not disabled. Mr. Fields once again appealed, and the Appeals Council, for a second time, denied review.

After entering into another retainer agreement with Binder & Binder, Mr. Fields again sought review of the agency's decision in federal court and filed a second suit in the Southern District on March 7, 2018. The Commissioner replied by filing the administrative record on July 9, 2018, and Mr. Fields then moved for judgment on the pleadings. In support of this motion, Binder & Binder submitted a 19-page memorandum of law, summarizing years of medical evidence relating to Mr. Fields's disability and arguing that the ALJ, in determining Mr. Fields's residual functional capacity, had failed to weigh the medical opinion evidence properly.

The parties again stipulated to a remand for further administrative proceedings, and, on October 29, 2018, the district court (Stewart D. Aaron, *M.J.*) entered an order remanding the case to the agency.[3] Based on this success in obtaining remand, Binder & Binder sought attorney's fees under the Equal Access

---

[3] The parties consented to proceeding before a magistrate judge. *See* 28 U.S.C. § 636(c).

to Justice Act ("EAJA"), 28 U.S.C. § 2412, and the court ordered the Commissioner to pay $5,100 in EAJA fees.[4]

Following the district court's remand to the agency, the Appeals Council determined that the ALJ "did not rely on medical evidence of record in establishing [Mr. Fields's] residual functional capacity" and remanded the case for further development of the record and an opportunity for a new hearing. Joint App'x at 38-39. It also directed that, on remand, the case be assigned to a different ALJ. *Id.* at 39. ALJ Kieran McCormack conducted an administrative hearing on October 2, 2019, and a supplemental hearing on April 8, 2020. On April 13, 2020, ALJ McCormack issued a fully favorable decision, finding that Mr. Fields was disabled and had been disabled since the asserted onset of disability on February 12, 2009. The Social Security Administration calculated Mr. Fields's past-due benefits at $160,680.00. *See id.* at 67. It withheld twenty-five percent of this amount ($40,170.00) for potential attorney's fees, and found that, subject to the continuation of his disability, Mr. Fields was entitled to monthly payments of $1,349.00 in the future. *Id.*

Following this successful outcome, Binder & Binder applied for attorney's fees under 42 U.S.C. § 406(b)(1). The retainer agreement with Mr. Fields provided that, subject to the approval of the district court or Social Security Administration, Binder & Binder would receive up to twenty-five percent of any award of past-due

---

[4] EAJA is a fee-shifting provision that allows for limited attorney's fees payable by the United States to the prevailing party where the position of the United States was not "substantially justified." 28 U.S.C. § 2412(d)(1)(A).

benefits secured. Citing the language in the retainer agreement and counsel's extensive experience in the field, Binder & Binder requested $40,170.00 in attorney's fees. *See id.* at 59. At the same time, and upon receipt of this amount, Binder & Binder agreed to remit the previously awarded EAJA fees to Mr. Fields. *See id.*

In the memorandum of law supporting this motion for fees, Binder & Binder noted that the requested fees "would result in a *de facto* hourly rate of approximately $1,556.98 an hour" and pointed to district courts in the Second Circuit that had allowed comparable de facto hourly rates. *Id.* at 74. Binder & Binder urged the district court to consider the fact that they had represented Mr. Fields "for many years" through "multiple hearings and appeals," all the while facing the risk of nonpayment that is inherent in contingency representations. *Id.* at 75-77.

The Commissioner filed a response shortly thereafter "to advise the Court of the [Commissioner's] view with respect to [the] fee request." *Id.* at 80.[5] While recognizing that the district court "must make its own determination as to whether a *de facto* hourly rate of $1,556.98 is reasonable and not a windfall" and while noting that "courts within . . . the Second Circuit have approved and disapproved

---

[5] The Supreme Court has explained the role the government plays in such cases. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 798 n.6 (2002).

comparable hourly rates," the Commissioner advised that "a *de facto* hourly rate of $1,556.98 is on the higher end of what some courts have approved." *Id.* at 81.[6]

The district court granted in part and denied in part Binder & Binder's motion for attorney's fees. *See Fields v. Saul*, 1:18-cv-02072 (SDA), 2020 WL 5350483, *4 (S.D.N.Y. Sept. 5, 2020). In an order dated September 5, 2020, it found that the requested $40,170.00 "would result in an unreasonable fee to Binder & Binder," and concluded that a reduced award of $19,350.00 would "adequately compensate[] Binder & Binder for the time spent on this case, the risks that they accepted in undertaking the representation . . . on a contingency basis[,] and the successful result obtained for [Mr. Fields]." *Id.* at *4. The district court reached this conclusion despite observing that Binder & Binder had substantial experience with Social Security cases, had not unreasonably delayed proceedings, had filed written submissions in the case that were "specific and well supported," and had "represented the claimant during multiple hearings and appeals." *Id.* at *3-*4. The district court's reduction of the requested fee rested entirely on its belief that a de facto hourly rate of $1,556.98—the requested fee of $40,170.00 divided by the 25.8 hours expended by Binder & Binder in federal court—would result in an impermissible windfall. *Id.* at *4. According to the district court, the lower de facto hourly rate of $750.00 achieved by its reduced award of $19,350.00 still would "satisf[y] the underlying policy goal of ensuring that claimants have qualified counsel representing them in their social security appeals." *Id.*

---

[6] Binder & Binder forwarded a copy of their motion for fees to Mr. Fields at his last known address, but he took no part in the proceedings.

Having had their requested fee reduced by more than half, Binder & Binder appealed.[7]

**DISCUSSION**

I.

We review a district court's decision regarding attorney's fees under 42 U.S.C. § 406(b) for abuse of discretion. *Sinkler v. Berryhill*, 932 F.3d 83, 86 (2d Cir. 2019). A district court abuses its discretion "when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *Vincent v. Comm'r of Social Security*, 651 F.3d 299, 302 (2d Cir. 2011) (internal quotation marks omitted).

Section 406(b) of the Social Security Act ("the Act") allows courts to grant reasonable attorney's fees for successful representation in Social Security actions:

> Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment, and the Commissioner of Social Security may . . . certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits.

---

[7] Although Mr. Fields was listed as the plaintiff below, the real party in interest in this appeal is Binder & Binder, who seeks to obtain a higher fee award under § 406(b). *See Gisbrecht*, 535 U.S. at 798 n.6.

In case of any such judgment, no other fee may be payable or certified for payment for such representation except as provided in this paragraph.

42 U.S.C. § 406(b)(1)(A). "The effect of the provision, which was originally passed in 1965, is threefold": it "fix[es] a maximum percentage for contingent fees" of twenty-five percent;[8] "[it] permit[s] recovery of such fees only out of past due benefits; and [it] require[s] court approval for whatever amount of such fees should be paid." *Wells v. Bowen* ("*Wells I*"), 855 F.2d 37, 41 (2d Cir. 1988) (alterations in original and internal quotation marks omitted).

But § 406(b) is not entirely self-explanatory. In *Wells v. Sullivan* ("*Wells II*"), 907 F.2d 367 (1990), we observed that § 406(b) allows contingency agreements but "gives no guidance as to how a court should treat them in determining a 'reasonable fee.'" *Id.* at 369.

Seeking to provide that guidance, we held that "where there is a contingency fee agreement in a successful social security case, the district court's determination of a reasonable fee under § 406(b) must begin with the agreement, and the district court may reduce the amount called for by the contingency agreement only when it finds the amount to be unreasonable." *Id.* at 371. In so holding, we rejected reliance on "the traditional lodestar method" utilized in fee-shifting cases, where courts are called on to act as

---

[8] Prior to the passage of § 406(b), the Senate Finance Committee observed that lawyers in Social Security cases were charging "inordinately large fees" through contingency agreements for "one-third to one-half" of past-due benefits. S. Rep. No. 89-404, at 2062 (1965).

11

"Solomon-like arbiters of 'reasonableness' between the opposing interests of prevailing plaintiffs and losing defendants." *Id.* We explained that "because a successful social security claimant evaluates and pays his own attorney, a court's primary focus should be on the reasonableness of the contingency agreement in the context of the particular case"—"not an hourly rate determined under lodestar calculations." *Id.*

In evaluating the reasonableness of the contingency agreement in a given case, *Wells II* instructed courts to "determine whether the contingency percentage is within the 25% cap" and then to consider "whether there has been fraud or overreaching in making the agreement, and"—of particular importance here—"whether the requested amount is so large as to be a windfall to the attorney." *Id.* at 372. We explained that a court may reduce the amount of attorney's fees "provided it states the reasons for and the amounts of the deductions." *Id.*

The Supreme Court gave its imprimatur to this interpretation of § 406(b) in *Gisbrecht v. Barnhart*, 535 U.S. 789 (2002). *Gisbrecht* resolved a split between circuits that were following a "lodestar method" and circuits (including ours) that were "giving effect to attorney-client contingent-fee agreement[s]" when the resulting fees were reasonable. *Id.* at 799. As the Court explained:

> Most plausibly read, . . . § 406(b) does not displace contingent-fee agreements as the primary means by which fees are set for successfully representing Social Security benefits claimants in court. Rather, § 406(b) calls for court review of such arrangements as an independent check, to assure that they yield reasonable results in particular cases.

*Id.* at 807.

*Gisbrecht* clarified that courts should "approach fee determinations by looking first to the contingent-fee agreement, then testing it for reasonableness," and provided examples of factors a court might consider in conducting this reasonableness analysis. *Id.* at 808. First, the Court pointed to "the character of the representation and the results the representative achieved," noting that courts may reduce the requested fees where the representation is substandard. *Id.* Second, the Court indicated that a reduction is appropriate where "the attorney is responsible for delay," lest the attorney "profit from the accumulation of benefits" during a delay that the attorney caused. *Id.* And third, a reduction may be in order "[i]f the benefits are large in comparison to the amount of time counsel spent on the case"—the so-called "windfall" factor that our court articulated in *Wells II*. *Id.* (citing *Wells II*, 907 F.2d at 372).

Most of the factors articulated in *Wells II* and *Gisbrecht* are straightforward and readily applied. For instance, our district courts are well-equipped to consider the character of the representation as well as the result the representative achieved. The same is true as to determining whether the attorney is responsible for delay, or whether there has been fraud or overreaching in the making of the contingency agreement.

The "windfall" factor, however, is less clear. Both *Wells II* and *Gisbrecht* reinforced the primacy of contingency agreements in Social Security cases and rejected reliance on the lodestar method. But some jurists have expressed frustration that the windfall factor could be read as simply

the lodestar method by another name and, as such, incompatible with the stated approach of these opinions. *See, e.g.*, *id.* at 809 (Scalia, *J.*, dissenting) (describing the Court's opinion as an effort to "combine the incompatible"). We today wish to make clear that the windfall factor does *not* constitute a way of reintroducing the lodestar method and, in doing so, to indicate the limits of the windfall factor.

II.

In determining whether there is a windfall that renders a § 406(b) fee in a particular case unreasonable, courts must consider more than the de facto hourly rate. *Accord Jeter v. Astrue*, 622 F.3d 371, 381 (5th Cir. 2010) ("[T]he lodestar calculation alone cannot constitute *the* basis for an 'unreasonable' finding. … [T]he district court must also articulate the factors that demonstrate to the court that the fee is unearned."). In other words, even a relatively high hourly rate may be perfectly reasonable, and not a windfall, in the context of any given case.

Among the factors to be considered are the ability and expertise of the lawyers and whether they were particularly efficient, accomplishing in a relatively short amount of time what less specialized or less well-trained lawyers might take far longer to do. And in the case before us, there is no doubt that Binder & Binder's specialization and expertise enabled them to operate especially efficiently. *See Fields*, 2020 WL 5350483, at *3 (noting that Binder & Binder is "well experienced in handling social security cases").

Daniel S. Jones of Binder & Binder spent 22.70 hours working on Mr. Fields's case at the federal level, and in that time managed to review the 863-page administrative record in its entirety, draft a highly detailed 19-page memorandum

of law, and successfully negotiate a stipulated remand with the government lawyers. Joint App'x at 58, 64. Mr. Jones has honed his practice to Social Security disability law. He spent eight years working as a non-attorney representative of claimants appearing before the Social Security Administration. *Id.* at 58. Now, as an attorney, he practices exclusively in the area of federal court appeals of Social Security disability claims. *Id.*

Charles E. Binder of Binder & Binder spent 3.10 hours working on Mr. Fields's case at the federal level, reviewing and revising the work of Mr. Jones. *Id.* at 57, 64. Mr. Binder has handled thousands of administrative hearings and federal appeals in Social Security disability cases, and frequently shares his expertise with others in the field, lecturing on Social Security disability for the New York State Bar Association's continuing legal education program, at conferences organized by the Practicing Law Institute, and before the pro bono panel of the Eastern District of New York. *Id.* at 57-58. He also has testified before the House Ways and Means Social Security Subcommittee regarding the Social Security Disability program. *Id.* at 58.

Binder & Binder's ability and expertise allowed it to accomplish in just 25.8 hours what other lawyers might reasonably have taken twice as much time to do. And the relatively high de facto hourly rate of $1,556.98 must be viewed in this context. It would be foolish to punish a firm for its efficiency and thereby encourage inefficiency. *See Jeter*, 622 F.3d at 380-81 ("[W]e do not read *Gisbrecht*'s 'windfall' as support for the proposition that experienced, competent counsel should be punished for accomplishing an arduous task in a shorter span of time than less-experienced, less-aggressive counsel.").

15

Secondly, courts should consider the nature and length of the professional relationship with the claimant—including any representation at the agency level—when determining whether a requested fee can truly be deemed a windfall. While § 406(b) fees compensate counsel for court-related work, consideration of "the time spent and work performed by counsel on the case when it was pending at the agency level" can inform a district court's understanding of "the overall complexity of the case, the lawyering skills necessary to handle it effectively, the risks involved, and the significance of the result achieved in district court." *Mudd v. Barnhart*, 418 F.3d 424, 428 (4th Cir. 2005).

Here, Binder & Binder represented Mr. Fields since the start of agency proceedings in 2011, advocating on his behalf during four separate hearings before ALJs and in multiple petitions to the Appeals Council. It is quite likely that the significant investment of time and effort in Mr. Fields's case at the agency level further enabled Binder & Binder to operate with efficiency in the federal courts. *See Fields*, 2020 WL 5350483, at *4 (acknowledging that "Binder & Binder represented the claimant during multiple hearings and appeals" at the agency level and noting that this distinguished this case from some others that found a windfall).

A third factor to consider is the satisfaction of the disabled claimant. Here, Binder & Binder's efforts on behalf of Mr. Fields were particularly successful, resulting in a fully favorable decision from the Social Security Administration. Mr. Fields stands to receive a six-figure award of past-due benefits as well as ongoing monthly benefits, after the government fought long and hard to keep him from recovering anything. It is worth noting that the record contains no indication that

16

Mr. Fields—who, unlike the Commissioner, has a direct financial stake in the fee determination—objects to the fee award. And counsel specifically represents that Mr. Fields has not objected to the request for fees. *See* Appellant's Br. at 22-23; *see also* Brief for Nat'l Org. of Soc. Sec. Claimants' Reps. as Amicus Curiae Supporting Petitioners at 2, *Gisbrecht v. Barnhart*, 535 U.S. 789 (2002) (No. 01-131) (asserting that some claimants "express frustration if the court will not allow them to pay their attorneys the promised amount"). Rather, it is the Commissioner who is objecting to the fee award, while occupying the "anomalous role" of "first denying benefits to a claimant, and then after losing the case, posing as a protector of the plaintiff, but spending more time and money in order to reduce the fees to be paid to the claimant's attorney." *Wells II*, 907 F.2d at 372.[9] Thanks to Binder & Binder's efforts, Mr. Fields has achieved an excellent result in this case, and there is no reason to think he is dissatisfied.

Finally, a fourth important factor to consider is how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result. Lawyers who operate on contingency—even the very best ones—lose a significant number of their cases and receive no compensation when they do. "In the absence of a fixed-fee agreement, payment for an attorney in a social security case is inevitably uncertain, and any reasonable fee award must take account of

---

[9] Of course, while the Commissioner "has no direct financial stake in the answer to the § 406(b) question," she is entitled to "play[] a part in the fee determination resembling that of a trustee for the claimants." *Gisbrecht*, 535 U.S. at 798 n.6. And we do not mean to imply that the Commissioner has done anything wrong by assuming that role. But all the same, we cannot avoid some skepticism of the Commissioner's position in such circumstances.

17

that risk." *Wells II*, 907 F.2d at 371. Here, the case went back up to the district court several times and, until the end, it was not clear how it would come out. The success of the claim was far from a sure thing, as evidenced by the fact that it was denied multiple times at the agency level. And advancing the claim in the district court was not without effort, as the district court acknowledged when it noted that Binder & Binder had submitted a 19-page memorandum of law that was "specific and well supported." *Fields*, 2020 WL 5350483, at *3. A windfall is more likely to be present in a case, unlike this one, where the lawyer takes on a contingency-fee representation that succeeds immediately and with minimal effort, suggesting very little risk of nonrecovery. That kind of unearned advantage is what the windfall concern really is about.

Looking at the relevant factors, both separately and together, we are confident that the fee requested by Binder & Binder is not a windfall. Rather, it is the product of efficient and effective representation, which drew upon Binder & Binder's substantial experience and expertise and was informed by the firm's representation of Mr. Fields through years of agency proceedings. And while a de facto hourly rate that is starkly out of line with de facto hourly rates in other Social Security cases may suggest a windfall, the rate here is not such an outlier.[10] We

---

[10] *See Batista v. Comm'r of Soc. Sec.*, No. 13-CV-4185 (BMC), 2021 WL 6051569, at *2 (E.D.N.Y. Dec. 21, 2021) (de facto hourly rate of $1,381.22 for Binder & Binder); *Bate v. Berryhill*, No. 18-CV-1229 (ER), 2020 WL 728784, at *3 (S.D.N.Y. Feb. 13, 2020) (de facto hourly rate of $1,506.32 for Binder & Binder); *Begej v. Berryhill*, No. 3:14-cv-128(WIG), 2019 WL 2183105, at *2 (D. Conn. May 21, 2019) (de facto hourly rate of $1,289.06 for Binder & Binder); *see also Eric K. v. Berryhill*, No. 5:15-CV-00845 (BKS), 2019 WL 1025791, at *3 (N.D.N.Y. Mar. 4, 2019) (de facto hourly rate of

have previously cautioned against "automatically reducing" reasonable contingency agreements, cognizant that doing so "would impair claimants' ability to secure representation." *Wells II*, 907 F.2d at 371. To deem Binder & Binder's requested fee a windfall, under the circumstances of this case, would be doing exactly that. Thus, the district court's finding of a windfall, on this record, constituted an abuse of discretion.

III.

The district court's conclusion that the requested fee was unreasonable rested entirely on its finding of a windfall. Indeed, the court acknowledged that all other considerations supported the reasonableness of Binder & Binder's request. Having determined that the requested fee would not constitute a windfall, as that term is properly understood, we conclude that the requested fee of $40,170.00 is reasonable and should be granted. *Cf. Crawford v. Astrue*, 586 F.3d 1142, 1152 (9th Cir. 2009) (en banc) (declining to remand for the district court to redo the § 406(b) analysis where counsel "have waited a long, long time for payment, and have borne the costs of this appeal out of the fees to which they are entitled").

**CONCLUSION**

We, therefore, **REVERSE** the district court's order reducing the requested fee and **REMAND** with instructions to order the Social Security Administration

---

$1,500); *Kazanjian v. Astrue*, No. 09 CIV. 3678 BMC, 2011 WL 2847439, at *2 (E.D.N.Y. July 15, 2011) (de facto hourly rate of $2,100); *Boyd v. Barnhart*, No. 97-cv-7273, 2002 WL 32096590, at *3 (N.D.N.Y. Oct. 24, 2002) (de facto hourly rate of $1,324.52).

to release the withheld fees to Binder & Binder, at which time Binder & Binder must, as pledged, remit the EAJA fees to Mr. Fields.