In the

# United States Court of Appeals

## For the Seventh Circuit

No. 23-1305

CHRISTIAN S. ARNOLD,

*Plaintiff-Appellant,*

*v.*

MARTIN J. O'MALLEY,
Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 20-cv-03344 — **Sue E. Myerscough**, *Judge.*

ARGUED NOVEMBER 15, 2023 — DECIDED JULY 1, 2024

Before SYKES, *Chief Judge*, and BRENNAN, and LEE, *Circuit Judges*.

PER CURIAM. After a remand from the district court, an administrative law judge (ALJ) with the Social Security Administration determined that Christian Arnold was disabled and entitled to past-due benefits. His law firm, Binder & Binder, then requested attorneys' fees under 42 U.S.C. § 406(b), pointing to a contingency fee agreement Arnold had signed. Rather

than adhering to the agreement, the district court reduced the request by nearly sixty percent, concluding that the full request amounted to a "windfall" to Binder, proscribed by statute. Binder appeals, arguing that the court abused its discretion by declining to award its requested fees, which the contingency fee agreement prescribed and the statute allowed.

We have not had occasion to apply the Supreme Court's decision in *Gisbrecht v. Barnhart*, 535 U.S. 789 (2002), to determine when and under what circumstances a district court can deviate from contracted-for fees under § 406(b). We take this opportunity to explain how a court should go about this analysis. Here, we conclude that the district court abused its discretion by not anchoring its analysis first and foremost on the contingency agreement before otherwise considering the reasonableness of the request. Accordingly, we vacate and remand for further proceedings consistent with this opinion.

## I. Background

In April 2018, Arnold retained Binder & Binder (Binder) to pursue a claim for disability insurance benefits before the Social Security Administration (the Administration).[1] The ALJ concluded that Arnold was not disabled, and the Appeals Council denied his request for review. Arnold decided to appeal the agency action in the district court and entered into a new retainer and fee agreement with Binder to represent him.

---

[1] Arnold is the named appellant, but the real party in interest is Binder & Binder, which is challenging the decision to reduce its fees. *See Gisbrecht*, 535 U.S. at 798 n.6. And although the Commissioner lacks a financial stake in this appeal because the fees will be taken from Arnold's benefits, the Commissioner resembles "a trustee for the claimant[]." *See id.*

In the district court proceedings, Binder eventually moved for summary judgment. In support of the motion, Binder filed a twenty-three-page brief that outlined Arnold's medical history and argued that the ALJ had failed to properly evaluate the various medical opinions in the record and Arnold's subjective statements about his symptoms. Rather than filing a response, the Commissioner agreed that remand was appropriate, and the district court returned the case to the Appeals Council for further proceedings. The court then approved the parties' proposed motion for fees and costs under the Equal Access to Justice Act, *see* 28 U.S.C. § 2412, and awarded Binder $5,694.44.

The Appeals Council then remanded the case to the ALJ, who issued a decision in Arnold's favor in October 2022. In it, the ALJ explained that Arnold was disabled as of December 2016 and that no further proceedings were necessary. As a result, the Administration issued a Notice of Award, informing Arnold that he was entitled to $160,797.10 in past-due benefits, which covered the period from May 2017 to September 2022. The Notice also told Arnold that the Administration had withheld twenty-five percent of his retroactive benefits (the statutory maximum) as potential attorneys' fees.

After obtaining this result, Binder moved in the district court for attorneys' fees under 42 U.S.C. § 406(b). Its contingency fee agreement with Arnold states that, if the district court remands his case and the Appeals Council or an ALJ awards Arnold past-due benefits:

> [T]he law firm may apply for fees under 42 U.S.C. § 406(a) and/or § 406(b). These [sic] combined amount of these fees will not exceed

> 25% of any back due benefits due to [Arnold]
> and [his] family.

(emphasis removed).[2] (Section 406(a) governs attorneys' fees for representation before the Administration; § 406(b) governs fees for representation before federal courts. *Gisbrecht*, 535 U.S. at 794.)

In its motion, Binder sought twenty-five percent of Arnold's retroactive benefits (here, $40,199.27) and stated that it would refund to Arnold the $5,694.44 it already had received under § 2412, as required. *See Gisbrecht*, 535 U.S. at 796. Relying on *Gisbrecht*, Binder asserted that its request was reasonable given the quality and success of the representation. Binder also submitted records showing that it had spent 28.2 hours on Arnold's case in the district court. According to Binder, although the fee it sought represented an average hourly rate of $1,425.51, other district courts in this circuit had approved similar fees. Arnold did not file an objection to Binder's request.

The Commissioner, however, did. Observing that $1,425.51 was much higher than the average billing rate for Illinois attorneys generally as well as rates approved by district courts in Social Security cases, the Commissioner argued that awarding the full twenty-five percent would result in a

---

[2] At argument, we questioned whether Binder's agreement was a contingency agreement because it simply reproduced what the statute allows. It did not require Arnold to agree that Binder would seek twenty-five percent, or any amount, of his benefits or define the "fees" other than to say they "will not exceed 25%." But this issue was not raised in the district court or briefed on appeal, so we assume for the purposes of this appeal that Arnold and Binder agreed that Arnold would pay up to twenty-five percent of his recovery in fees.

windfall to Binder and urged the court to award a lesser amount. As Binder saw it, the Commissioner's position impermissibly focused on the effective hourly rate and ignored the significant risk of nonpayment Binder bore when it took the case on a contingent basis. Binder referred to *Fields v. Kijakazi,* 24 F.4th 845, 851, 852 (2d Cir. 2022), a case with a similar procedural history where the court determined that an effective hourly rate of $1,556.98 was reasonable and not a windfall.

The district court agreed with the Commissioner and awarded only $16,920, which was 28.2 hours multiplied by an hourly rate of $600. In doing so, the court acknowledged that Binder had demonstrated substantial experience litigating Social Security cases. Nor was there any indication that Arnold was dissatisfied with Binder or that Binder had unnecessarily protracted the proceedings. Nevertheless, the court concluded that the "case did not present any particularly difficult challenges or any extraordinary circumstances" and recounted that it had found hourly rates of $300 to $600 to be reasonable in recent "Second Amendment" cases involving attorneys with "comparable expertise and experience." As such, the court determined that $600 was a more reasonable rate that would ensure that Binder did not receive a windfall. We now turn to Binder's appeal.

## II. Discussion

### A. The Statute and Caselaw

Section 406(b) permits attorneys to recover fees for their work in federal court on behalf of Social Security claimants. As relevant here, the provision states:

> Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment ….[3]

42 U.S.C. § 406(b)(1)(A).

But how does one determine reasonableness under § 406(b) when the claimant-attorney relationship is governed by a contingency agreement (that satisfies the statutory twenty-five percent cap)? The federal circuit courts had answered this question in different ways. Our approach was to enforce reasonable contingency agreements because "simply determining a reasonable hourly rate is inappropriate when an attorney is working pursuant to a reasonable contingency contract." *See McGuire v. Sullivan*, 873 F.2d 974, 980 (7th Cir. 1989). Other circuits began with the well-known "lodestar"

---

[3] We have not expressly stated that a claimant's award of benefits after a case is remanded for further proceedings is "by reason of" the court's judgment. But we have suggested as much, *see Smith v. Bowen*, 815 F.2d 1152, 1155 (7th Cir. 1987), and every circuit to consider the issue has concluded that attorneys may seek fees under § 406(b) when a court remands for further proceedings, *see Jackson v. Astrue*, 705 F.3d 527, 529 (5th Cir. 2013); *Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1277 (11th Cir. 2006); *McGraw v. Barnhart*, 450 F.3d 493, 496 (10th Cir. 2006); *Conner v. Gardner*, 381 F.2d 497, 500 (4th Cir. 1967); *see also Sinkler v. Berryhill*, 932 F.3d 83, 85 (2d Cir. 2019); *Philpott v. Gardner*, 403 F.2d 774, 775 (6th Cir. 1968); *Gardner v. Menendez*, 373 F.2d 488, 490 (1st Cir. 1967); *cf. Parrish v. Comm'r of Soc. Sec. Admin.*, 698 F.3d 1215, 1221 (9th Cir. 2012); *Fenix v. Finch*, 436 F.2d 831, 835 (8th Cir. 1971).

method, multiplying the hours an attorney reasonably spent on the case by a "reasonable" rate; courts could then adjust the amount to account for numerous factors, including a case's complexity and the risk of nonpayment to an attorney in a contingency arrangement. *See e.g.*, *Gisbrecht v. Apfel*, 238 F.3d 1196, 1197–98 (9th Cir. 2000), *rev'd, Gisbrecht*, 535 U.S. at 799.

### 1. *Gisbrecht v. Barnhart*

The Supreme Court attempted to resolve the circuit disagreement in *Gisbrecht v. Barnhart*. Observing that contingency fee contracts are "the most common fee arrangement between attorneys and Social Security claimants," 535 U.S. at 800, the Court concluded that § 406(b) compels district courts to accept the "primacy" of such fee agreements, *id.* at 793. Only then does § 406(b) call for "review of such arrangements as an independent check, to assure that they yield reasonable results in particular cases." *Id.* at 807. In arriving at this conclusion, the Court rejected the lodestar method as a starting point for the reasonableness analysis under § 406(b). On the way, the Court reviewed § 406(b)'s text as well as its legislative history, with particular attention to Congress's decision in 1965 to cap § 406(b) fees at twenty-five percent of a claimant's past-due benefits. *Id.* at 806. Given this, the Court observed, "[i]t is also unlikely that Congress … intended to install a lodestar method courts did not develop until some years later." *Id.*

Grounding a § 406(b) reasonableness analysis on a lode-star calculation, the Court explained, was also inapt because the lodestar methodology arose in the context of fee-shifting statutes, where the losing side pays the fees of the prevailing party. *Id.* at 802. By contrast, under § 406(b), the claimant is the one who pays the fees from his award. *Id.*

How, then, should a district court handle contingent fee agreements under § 406(b)? In the Court's words:

> [Section] 406(b) does not displace contingent-fee agreements as the primary means by which fees are set for successfully representing Social Security benefits claimants in court. Rather, § 406(b) calls for court review of such arrangements as an independent check, to assure that they yield reasonable results in particular cases.

*Id.* at 807.

Put another way, courts should "look[] first to the contingent-fee agreement, then test[] it for reasonableness" based on the "character of the representation," the results achieved, whether the attorney was responsible for any delay, and whether "the benefits are large in comparison to the amount of time counsel spent on the case." *Id.* at 808. And, it is with respect to this last factor that a court may consider the hours an attorney spent representing a claimant and the attorneys' billing rates in non-contingency cases "as an aid to the court's assessment of the reasonableness of the fee yielded by the fee agreement." *Id.* In announcing this test, however, the Court cited with approval a case holding that judges should "disallow 'windfalls for lawyers,'" *id.* (citing *Rodriquez v. Bowen*, 865 F.2d 739, 747 (6th Cir. 1989) (en banc)), paving the way for much debate about what constitutes an impermissible "windfall" under § 406(b), *see id.* at 809 (Scalia, J., dissenting) ("I do not know what the judges of our district courts and courts of appeals are to make of today's opinion.").

### 2. Post-*Gisbrecht* Cases

The decisions analyzing § 406(b) since *Gisbrecht* suggest that applying it has proven challenging. *See, e.g.*, *Jeter v. Astrue*, 622 F.3d 371, 377 (5th Cir. 2010) (unsurprised that many courts view *Gisbrecht* as containing a "contradictory mandate"); *Crawford v. Astrue*, 586 F.3d 1142, 1151 (9th Cir. 2009) (en banc) (noting that *Gisbrecht* did not give courts a "definitive list of factors" or explain how to weigh factors to determine reasonableness of requested fee). And much of the confusion surrounds the meaning of the term "windfall," *see Fields*, 24 F.4th at 849, 853 (noting that most of the reasonableness factors are "straightforward and readily applied," but "[t]he 'windfall' factor … is less clear"), although, it must be said, the Supreme Court itself never employed the term in *Gisbrecht*. (Rather, the Court cited *Rodriquez* and included in a parenthetical a quote from that case in which "windfall" appears.)

Binder urges us to follow the Second Circuit's decision in *Fields*, which has a procedural background similar to the one here, except that there were two appeals to the district court, and the Commissioner twice stipulated to a remand to the agency. 24 F.4th at 850. The claimant was eventually awarded $160,680 in past-due benefits. *Id.* at 851. Binder, which also represented the claimant in *Fields*, sought twenty-five percent of the award, or $40,170, in attorneys' fees, translating to an average hourly rate of $1,556.98. *Id.* The magistrate judge reduced the fee award to $19,350, representing an average of $750 per hour. *Id.* at 852. The magistrate judge's determination "rested entirely" on the belief that the effective hourly fee would be an unreasonable "windfall." *Id.* at 851–52.

On appeal, the Second Circuit held that the magistrate judge had abused his discretion and awarded Binder the full amount it sought. Salient here, the court sought to make clear that "the windfall factor does *not* constitute a way of reintroducing the lodestar method and, in doing so, to indicate the limits of the windfall factor." *Id.* at 854. Rather, the court interpreted the windfall exception narrowly, holding that for a fee recovery to be unreasonable because it is a "windfall" it must be "truly clear that the fee is unearned by counsel." *Id.* at 849. Accordingly, in conducting this inquiry, the court instructed, judges should consider factors beyond the effective hourly rate, including (1) the ability and expertise of counsel, (2) the nature of the attorney's relationship with the client, (3) the claimant's satisfaction, and (4) how certain it was that the claimant would prevail. *Id.* at 854–55; *see also Jeter*, 622 F.3d at 376 (affirming when court considered attorney's expertise, adequacy of representation, amount claimant recovered, percentage of award sought by attorney, attorney's risk of loss, and hourly rate). These factors, said the court, allow for the possibility that a relatively high rate is "perfectly reasonable, and not a windfall." *Fields*, 24 F.4th at 854.

We agree with the Second Circuit that the "windfall factor" should not become "a way of reintroducing the lodestar method." *Id.* Indeed, given that *Gisbrecht* never actually employs the word "windfall" in the body of the opinion, we question the outsized attention the term has received. Instead, we return to the foundational rule the Supreme Court announced in *Gisbrecht*—the award set by the contingency agreement must be the anchor of the court's reasonableness analysis under § 406(b). That said, as we noted in *McGuire*, 873 F.2d at 981, we do not go so far as to grant contingency fee agreements a rebuttable presumption of reasonableness as

the Sixth Circuit has, *see Lasley v. Comm'n of Soc. Sec.* 771 F.3d 308, 309 (6th Cir. 2014). Rather, a district court must begin with the contingency award as its polestar and consider whether that amount should be reduced because it is unwarranted based on relevant factors, such as the claimant's satisfaction with their attorney's representation, the attorney's expertise and efforts expended, whether the attorney engaged in any undue delay or overreaching, the uncertainty of recovery and risks of an adverse outcome, and how the effective hourly rate compares to others in the field and jurisdiction. *See Crawford*, 586 F.3d at 1151; *Jeter*, 622 F.3d at 376. To be sure, this list is not meant to be exhaustive. Moreover, the inquiry is case-specific, and it will not produce the same results in every case.

This approach adheres to the dictate in *Gisbrecht* that courts should give primacy to fee agreements, while still leaving room for district courts to act as a "check" on contingent-fee arrangements that result in unreasonable fees, including when "benefits are large in comparison to the amount of time counsel spent on the case." *See* 535 U.S. at 807–08.

**B. Application to this Appeal**

Turning to this appeal, we review the district court's order allocating fees for an abuse of discretion. *O'Donnell v. Saul*, 983 F.3d 950, 954 (7th Cir. 2020). It is the attorney's burden to show that the fee sought under the contingency agreement is "reasonable for the services rendered." *Gisbrecht*, 535 U.S. at 807. A district court's reasonableness determination "ordinarily qualif[ies] for highly respectful review." *Id.* at 808. But an abuse of discretion may occur when a district court "reaches erroneous conclusions of law," *Gastineau v. Wright*, 592 F.3d

747, 748 (7th Cir. 2010) (citation omitted), or fails to provide an explanation for its conclusions, *McGuire*, 873 F.2d at 985.

Although it acknowledged *Gisbrecht*'s command to look first to the contingency agreement, the district court centered its analysis on an hourly rate it thought was reasonable, not the contractual arrangement between Binder and Arnold.

The court gave two reasons to support its conclusion that a twenty-five percent fee would be a windfall. The first—that the "case did not present any particularly difficult challenges or any extraordinary circumstances"—could be read to align with *Gisbrecht*'s assertion that reductions may be appropriate when the award is large compared to the time counsel spent on the case. *See* 535 U.S. at 808. Indeed, we have just stated that the degree of difficulty and counsel's effort are relevant factors.[4]

But, rather than starting with the contingent fee amount and finding reasons to adjust downward, the district court here did the opposite; it started with an hourly rate it deemed reasonable and asked whether the rate should be adjusted upward. This is the opposite of the approach *Gisbrecht* teaches. *See Crawford*, 586 F.3d at 1149 (correct question is whether the

---

[4] Binder argues that the court did not explain its conclusion about the case's difficulty, and that, regardless, the court's conclusion was erroneous because the case involved new regulations. But, as the Commissioner points out, the court's observations about the case—the length of the record and counsel's memorandum, and the Commissioner's decision to move for a remand—might support its view that it was relatively simple, so the maximum fee was unjustified. *See McGuire*, 873 F.2d at 982 (suggesting attorneys should not pursue twenty-five percent of past-due benefits except in "difficult" cases).

contingency "amount need be reduced, not whether the load-star [sic] amount should be enhanced").

The court's second reason for reducing Binder's requested fee also conflicts with *Gisbrecht*. The court explained that it had "assessed the reasonableness of requested attorney's fees in Second Amendment cases and [had] found effective hourly rates of $300 to $600 reasonable." The attorneys in these cases, *see Pub. Int. Legal Found., Inc. v. Matthews*, No. 20-cv-3190 (C.D. Ill. June 8, 2022); *Moore v. Madigan*, No. 3:11-cv-3134 (C.D. Ill. July 21, 2015), had comparable expertise and experience to the Binder lawyers, the court said. But those cases involved fee-shifting statutes, *see* 42 U.S.C. § 1988; 52 U.S.C. § 20510, which traditionally involve lodestar calculations. As Binder correctly noted and as we explained above, in *Gisbrecht*, the Supreme Court expressly stated that § 406(b) is not comparable to fee-shifting statutes. We therefore would not expect in the ordinary case for district courts to consult fee-shifting cases to determine the reasonableness of a contingency fee under § 406(b). And, to the extent a district court finds such a comparison helpful, it should lay out its reasons for thinking so.

For these reasons, we conclude that the district court abused its discretion when it applied the incorrect legal framework for reviewing the reasonableness of the fees Binder requested under § 406(b). We offer no opinion about the reasonableness of the contingency fee agreement or Binder's requested fees. We also leave it to the district court to decide what impact, if any, Binder's prior receipt of $6,000 under § 406(a) has on its request for fees under § 406(b) and its contingency agreement with Arnold.

VACATED and REMANDED